UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

RICK GRENAWALT,

        Petitioner,

v.

DUNCAN MACLAREN,

        Respondent.

_____/

Case No. 2:18-cv-185

Honorable Gordon J. Quist

## **OPINION**

      This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, Rules Governing § 2254 Cases; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because it fails to raise a meritorious federal claim.

**Discussion**

I. <u>Factual Allegations</u>

Petitioner Rick Greenawalt is incarcerated with the Michigan Department of Corrections at Kinross Correctional Facility (KCF) in Kincheloe, Chippewa County, Michigan. Following a jury trial in the Eaton County Circuit Court, Petitioner was convicted of second-degree home invasion, Mich. Comp. Laws § 750.11a. On July 7, 2016, the court sentenced Petitioner to a prison term of 5 years and 11 months to 20 years.

Petitioner did not file a direct appeal to the Michigan Court of Appeals. He alleges that he handed the request for appellate counsel to his trial attorney at sentencing, and he attaches a copy of the document that purportedly so indicates (ECF No. 3-1, PageID.61), though Petitioner acknowledges that the request for counsel was never filed in the trial court. Because no request for counsel was submitted to the court, no direct appeal was filed, and the testimony at the trial was not transcribed.

On January 12, 2017, Petitioner filed a motion for relief from judgment in the Eaton County Circuit Court, alleging that trial counsel was ineffective for failing to investigate and failing to present a defense. In an order issued on January 24, 2017, the trial court denied the motion on the merits. (Order Den. Mot. for Relief from J., ECF No. 3-1, PageID.81-82.) Petitioner claims that the court improperly decided the motion on an incomplete record, because trial transcripts were never before the court. Petitioner avers that he moved to have the trial record transcribed on numerous occasions, to no effect. (*See* Aff. of Pet'r, ECF No. 3-1, PageID.60.) However, in the same affidavit, Petitioner references as evidence of his requests for transcripts only his affidavit, the circuit court docket sheet, and the purported request for counsel dated July 7, 2016. (*Id.*) The docket sheet, however, reflects that Petitioner did not request preparation of trial transcripts, but only made letter requests for file copies on November 17, 2016, November

2

28, 2016, and February 2, 2017, all of which were answered by letter. (*See* Cir. Ct. Docket Sheet, ECF No. 3-1, PageID.55-56.) Finally, on March 6, 2018, Petitioner requested that trial transcripts be prepared. The trial court denied the request for transcripts on March 12, 2018, after the time had elapsed for filing a direct appeal and after Petitioner's motion for relief from judgment had been denied. (*Id.*, PageID.56; Cir. Ct. Order Den. Tr., ECF No. 3-1, PageID.89.) The court denied reconsideration on Aug. 28, 2018. (Cir. Ct. Docket Sheet, ECF No. 3-1, PageID.56; Cir. Ct. Order Den. Reconsid., ECF No. 3-1, PageID.75.)

Petitioner appealed the denial of his motion for relief from judgment to both the Michigan Court of Appeals and the Michigan Supreme Court. In an order issued on July 13, 2018, the court of appeals denied the appeal on the ground that Petitioner had failed to establish that the trial court erred in denying the motion for relief from judgment. (Mich. Ct. App. Order, ECF No. 3-1, PageID.85.) The Supreme Court denied leave to appeal on April 3, 2018, because Petitioner failed to meet the burden of establishing entitlement to relief under Mich. Ct. R. 6.508(D). (Mich. Order, ECF No. 3-1, PageID.87.)

On October 17, 2018, Petitioner filed his habeas corpus petition with this District Court. Under Sixth Circuit precedent, the application is deemed filed when handed to prison authorities for mailing to the federal court. *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002). Petitioner signed his application and brief in support on October 17, 2018. (Br. in Supp. of Pet., ECF No. 3, PageID.48.) The petition was received by this Court on October 26, 2018. The Court has given Petitioner the benefit of the earliest possible filing date. *See Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008) (holding that the date the prisoner signs the document is deemed under Sixth Circuit law to be the date of handing to officials) (citing *Goins v. Saunders*, 206 F. App'x 497, 498 n.1 (6th Cir. 2006)).

3

The petition raises one ground for relief, as follows:

I. Ineffective Assistance of Counsel, failure to investigate, and failure to present a defense.

(Pet., ECF No. 1, PageID.6.)

## II. AEDPA Standard

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams*, 529 U.S. at 381-82; *Miller v. Straub*, 299 F.3d 570, 578-79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37-38 (2011). Thus, the inquiry is limited to an examination of the

legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 135 S. Ct. at 1376 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

III. <u>Ineffective Assistance of Counsel</u>

Petitioner contends that his trial attorney was ineffective in failing to investigate the elder stepson of the victim as a person who could have been involved in the taking of the stereo

5

receiver, casting doubt on Petitioner's guilt. In addition, Petitioner argues that counsel did not present an adequate defense when he did not call the stepson as a witness for the defense.

In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

Moreover, as the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential. *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 571 U.S. 12, 13 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011); *Premo v. Moore*, 562 U.S. 115, 122 (2011). In those circumstances, the question before the habeas court is "whether there is any reasonable argument

that counsel satisfied *Strickland*'s deferential standard." *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740-41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . .") (citing *Harrington*, 562 U.S. at 102).

In order to understand Petitioner's argument, some understanding of the case is essential. Petitioner's conviction arose out of a home invasion that occurred on December 14, 2015. The following factual background is taken from Petitioner's brief in support of the petition, which, in turn, cites Petitioner's preliminary examination transcript:

> Mike Sullivan arrived home at 3:00 pm, a short fifteen minutes after his stepson had arrived at the residence. (PE Vol II, March 24, 2016 page 6). Upon arrival, Mr. Sullivan entered his garage attached to his home, and noticed that his "stereo receiver" was missing from its location in his garage. (PR Vol II page 5). On that date, December 14th, 2015, Mr. Sullivan contacted the Sheriff[']s office to report the theft. (PR Vol II page 5). Mr. Sullivan reported that on December 14th, 2015 when he returned to work following lunch at 11:45 am his garage was "closed up" and his "Stereo receiver" was in it[]s normal location by the door where he would normal walked [sic] into his garage to find his "stereo system" in disarray, with his "stereo receiver" missing. (PE Vol II page 5-8).
>
> Ultimately, this matter was put under investigation and during a follow-up interview, Mr. Sullivan notified Detective Ivey that a Craftsman chainsaw was also missing. (PE Vol II page 9). A short time later, Mr. Sullivan and Mr. Ivey had another conversation during which there had been discussions as to any identifying characteristics of the stolen receiver. (PE Vol II, page 11). During the Preliminary Examination, Mr. Sullivan related the following to that conversation:
>
>> Q. Can you describe the damage that was on the receiver?
>>
>> A. Yeah. There's a bunch of buttons that you can change functions, you have phonograph, tape deck or various other things. And previously, probably roughly 10 years before someone broke into our house, they tried to steal my receiver. I had some zip ties for all the cables in the back so it wouldn't look so messy in the back, so when they were trying to take it they had a hard time taking it. But they damaged two buttons, my tape buttons; tape one and tape two." (PE Vol II page 11-12).
>
> Importantly, during cross-examination this break-in from ten years previously was explored by defense counsel:

7

Q. Okay, Now, you had mentioned that some time ago you had a – break-in. Is that the same break-in that your stepson's friends had broken into your house?

A. That's correct.

Q. Okay. What did they take?

A. They took a – about two or three Playstations, a bunch of games, a bunch of movies, a video camera.

THE COURT: Is this the thing 10 years before?

THE WITNESS: Yes. Yes, about roughly 10 to 12 years before."

(PE Vol 11 page 15-17).

Further testimony seems to be an attempt by Mr. Sullivan to distance his stepson from the crime, but nonetheless should have alerted counsel to investigate the matter further:

[]BY MR. VINCENT:

Q Okay. And you still have a stepson living in your home, correct.

A Yes.

Q Okay.

A Not the same stepson.

Q I understand.

A Okay.

Q. But your older stepson not currently living at the home, there did at some time have some shady – some shady friends? Or you can give me a better word that might describe it.

A. That's correct.[]

(PE Vol II page 16-17).

However, despite this testimony that his stepson was not currently living that contention was placed in doubt when, a few short moments later, Mr. Sullivan provided:

Q Okay. And how many children living in your home now?

8

> A  We have three now.
>
> Q  Okay.  Are they all your stepchildren?
>
> A  No. One's mine.  The oldest stepchild just moved back about two months ago.  And then one that's 17 that's living there right now.[]

(PE Vol II page 18).

> Clearly, trial counsel should have investigated the previous break-in and the victim's stepsons and their associates who had previously broke into Mr. Sullivan's home.  While each could have yielded relevant evidence shedding doubt on the culpability of Petition, it is clear that victim's stepsons and their associates would have provided a basis for the jury to find doubt that Petitioner committed a "Home Invasion[,"] and was but merely a purchaser and possessor of stolen items.
>
> * * *
>
> [T]he only other evidence was that, in relative relation in time, Petitioner's mother had pawned a "Craftsman Chainsaw" of the same make and model as the one Mr. Sullivan had subsequently reported to Detective Ivey, as also missing.  Further, as a result of that pawned []Chainsaw being discovery [sic] weeks later, Detective Ivey, based on consent of Petitioner's mother, searched a bedroom belonging to Petitioner, finding a receiver similar in make and model.

(Br. in Supp. of Pet., ECF No. 3, PageID.39-41, 44.)

Petitioner argues that, because unsavory friends of the victim's elder stepson had attempted to steal the victim's stereo receiver 10 or 12 years before the events for which Petitioner was being tried, counsel should have investigated and called the elder stepson as a witness, in order to show that someone else could have committed the 2015 home invasion and that Petitioner was merely a purchaser and possessor of stolen items.  The trial court rejected the argument with the following analysis:

> Defendant now argues that trial counsel was constitutionally deficient on several grounds.  Separately, Defendant also argues that he was overcharged.  Ineffective assistance of counsel is alleged for (1) failure to investigate, file motions, or prepare for trial and subject the prosecution's case to a meaningful adversarial testing; and (2) failure to investigate, locate, interview, and present potential witness testimony.  Defendant also alleges that this failure to call witnesses violates his right to confrontation.  Should the Court not find any of these

9

> errors adequate, Defendant also argues that their cumulative effect deprived him of several rights and requires a new trial.
>
> As an initial matter, Defendant's argument under the Confrontation Clause is improper and does not require further discussion.
>
> The remaining claims all appear to focus on trial counsel's failure to call the victim's step-son as a witness, who may have offered testimony contrary to the victim's testimony.
>
> "[T]o find that a defendant's right to effective assistance of counsel was so undermined that it justifies reversal of an otherwise valid conviction, a defendant must show that counsel's performance fell below an objective standard of reasonableness and that the representation so prejudiced the defendant as to deprive him of a fair trial." *People v. Pickens*, 446 Mich 298, 302-03 (1994).
>
> Defendant has not carried his burden. Defendant has not overcome the presumption that counsel was competent, see *id.* at 343, but even assuming without deciding that trial counsel's performance did fall below an objective standard of reasonableness, there is still no showing of actual prejudice. Additional witnesses may have testified differently, but they also may have offered more damaging testimony. There is not enough evidence to justify overturning the valid conviction.

(Cir. Ct. Order Den. Relief from J., ECF No. 3-1, PageID.81-82.)

Although the trial court cited only Michigan law, it squarely applied the *Strickland* standard to Petitioner's claim of ineffective assistance of counsel. Moreover, the trial court's resolution of Petitioner's claim is patently reasonable. In his habeas petition and supporting materials, Petitioner fails to present any evidence regarding what further investigation might have revealed or what the victim's stepson might have said. "It should go without saying that the absence of evidence cannot overcome the 'strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance." *Burt v. Titlow*, 134 S. Ct. 10, 17 (2013) (quoting *Strickland*, 466 U.S. at 689). Absent evidence of what the investigation would have revealed or what additional witnesses might have said, "*Strickland*'s deferential standard and AEDPA's doubly deferential standard require a finding that counsel's performance was not deficient." *Fitchett v. Perry*, 644 F. App'x 485, 489 (6th Cir. 2016); *see also Carter v. Mitchell*,

443 F.3d 517, 531 (6th Cir. 2006) (petitioner "provided no basis for a finding that trial counsel's investigation was unreasonable" where he did not introduce "any statement from trial counsel describing what [counsel] did or did not do in investigating [the petitioner's] background"); *Beuke v. Houk*, 537 F.3d 618, 644 (6th Cir. 2008) (rejecting ineffective-assistance claim on habeas review where petitioner "ask[ed] this court to assume," based on "sheer speculation," that his trial counsel did not perform an adequate mitigation investigation and where petitioner failed to provide "enough evidence to confirm or deny that conclusion").

Petitioner's claim of ineffective assistance of counsel therefore is meritless, because Petitioner both fails to demonstrate constitutional error and fails to overcome the deference owed to the state court's resolution of Petitioner's claim.

## Conclusion

In light of the foregoing, the Court will summarily dismiss Petitioner's application pursuant to Rule 4 because it fails to raise a meritorious federal claim.

## Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This Court's dismissal of Petitioner's action under Rule 4 of the Rules Governing § 2254 Cases is a determination that the habeas action, on its face, lacks sufficient merit to warrant service. It would be highly unlikely for this Court to grant a certificate, thus indicating to the Sixth Circuit Court of Appeals that an issue merits review, when the Court has already determined that the action is so lacking in merit that service is not warranted. *See Love v. Butler*, 952 F.2d 10, 15 (1st Cir. 1991) (it is "somewhat anomalous" for the court to summarily dismiss under Rule 4 and grant a certificate); *Hendricks v. Vasquez*, 908 F.2d 490, 492 (9th Cir. 1990) (requiring reversal where

court summarily dismissed under Rule 4 but granted certificate); *Dory v. Comm'r of Corr. of New York*, 865 F.2d 44, 46 (2d Cir. 1989) (it was "intrinsically contradictory" to grant a certificate when habeas action does not warrant service under Rule 4); *Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983) (issuing certificate would be inconsistent with a summary dismissal).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id*. Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability.

The Court will enter a judgment and order consistent with this opinion.

Dated: January 18, 2019                                 /s/ Gordon J. Quist
                                                         GORDON J. QUIST
                                              UNITED STATES DISTRICT JUDGE